CRAIG G. MARGULIES (SBN 185925)
JEREMY W. FAITH (SBN 190647)
NINA Z. JAVAN (SBN 271392)
**MARGULIES FAITH, LLP**
16030 Ventura Boulevard, Suite 470
Encino, CA  91436
Telephone:  (818) 705-2777
Facsimile:  (818) 705-3777
Email:  Craig@MarguliesFaithLaw.com
Email: Jeremy@MarguliesFaithLaw.com
Email: Nina@MarguliesFaithLaw.com

[Proposed] Attorneys for  Gospel Light Publications
Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## NORTHERN DIVISION

| | |
|---|---|
| In re | ) Case No. 9:15-bk-11586-PC |
| | ) |
| | ) Chapter 11 |
| | ) |
| GOSPEL LIGHT PUBLICATIONS, | ) **EMERGENCY MOTION OF DEBTOR** |
| | ) **AND DEBTOR IN POSSESSION FOR** |
| | ) **ORDER:** |
| Debtor and Debtor in | ) |
| Possession. | ) **(1) APPROVING SALE OF CERTAIN** |
| | ) **ASSETS FREE AND CLEAR OF** |
| | ) **ALL LIENS, CLAIMS,** |
| | ) **ENCUMBRANCES, AND** |
| | ) **INTERESTS;** |
| | ) |
| | ) **(2) APPROVING OVERBID AND** |
| | ) **AUCTION PROCEDURES; AND** |
| | ) |
| | ) **(3) SCHEDULING AN AUCTION AND** |
| | ) **HEARING TO CONSIDER THE** |
| | ) **SALE AND APPROVE THE FORM** |
| | ) **AND NOTICES RELATED** |
| | ) **THERETO** |
| | ) |
| | ) **MEMORANDUM OF POINTS AND** |
| | ) **AUTHORITIES; EXHIBITS THERETO** |
| | ) |
| | ) [Declaration of Dave Thornton, Chief |
| | ) Executive Officer, in Support of |
| | ) Emergency First Day Motions Filed |
| | ) Concurrently Herewith] |
| | ) |
| | ) Hearing Date to be Set by Court |

EMERGENCY MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR ORDER APPROVING SALE OF
CERTAIN ASSETS

1

2

**TABLE OF CONTENTS** **Page**

3

I.    <u>JURISDICTION AND SUMMARY OF RELIEF REQUESTED</u> ...................................4

II.   <u>GENERAL BACKGROUND</u>..............................................................................4

III.  <u>STATEMENT OF FACTS</u>...............................................................................4

  A.   <u>The Debtor and its Business Operations</u>..............................................4

  B.   <u>Events Leading to Bankruptcy</u> ...........................................................5

  C.   <u>The Debtor's Future Plans</u> .................................................................7

  D.   <u>The Proposed Sale</u>............................................................................8

  E.   <u>Proposed Bid Procedures</u> .................................................................9

IV.  <u>ARGUMENT</u>..............................................................................................13

  A.   <u>The Debtor's Proposed Sale of the ZDL Asset Should be Approved</u> .........13

  B.   <u>The Sale of the ZDL Asset Free and Clear of Liens, Claims, Encumbrances
       and Interests Pursuant to 11 U.S.C. § 363(f) Should be Approved</u> .............14

  C.   <u>Request for Waivers of Stay Under F.R.B.P. 6004(h) and 6006(d)</u> ..............16

V.   <u>CONCLUSION</u> ..........................................................................................17

i

1
2

# TABLE OF AUTHORITIES

## CASES                                                                   Page

3

Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot),
   94 B.R. 343, 345 (Bankr. E.D. Pa. 1988) ................................................................15

4

Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.),
   492 F.2d 793, 794 (9th Cir. 1974) ...........................................................................14

5

6

In re Canyon Partnership,
   55 B.R. 520 (Bankr. S.D. Cal. 1985) ........................................................................13

7

In re Channel One Communications, Inc.,
   117 B.R. 493, 496 (Bankr. E.D. Mo. 1990) ...............................................................15

8

9

In re Continental Airlines, Inc.,
   780 F.2d 1223, 1226 (5th Cir. 1986) ........................................................................13

10

In re Curlew Valley Assocs.,
   14 B.R. 506, 513-14 (Bankr. D. Utah 1981) .............................................................13

11

12

In re Lionel Corp.,
   722 F.2d 1063, 1071 (2d Cir. 1983) ........................................................................13

13

In re Moore,
   110 B.R. 924 (Bankr. C.D. Cal. 1990) .....................................................................13

14

15

Meyers v. Martin (In re Martin),
   91 F.3d 389, 395 (3d Cir. 1996) ..............................................................................13

16

Walter v. Sunwest Bank (In re Walter)
   83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) .................................................................13

17

18
19

## STATUES                                                                 Page

20

11 U.S.C. § 105 ..............................................................................................................1, 4

21

11 U.S.C. § 363 ..............................................................................................................1, 4

22

11 U.S.C. § 363(b) ..........................................................................................................1, 9,

23

11 U.S.C. § 363(b)(1) ........................................................................................................13

24

11 U.S.C. § 363(f) .............................................................................. 1, 9, 14, 15, 16

25

11 U.S.C. § 363(f)(2) ........................................................................................................15

26

11 U.S.C. § 363(m) ...............................................................................................................1

27

11 U.S.C. § 365 ..............................................................................................................1, 4

28

11 U.S.C. § 1107 ..................................................................................................................4

11 U.S.C. § 1108 .........................................................................................................4

28 U.S.C. § 157 ...........................................................................................................4

28 U.S.C. § 157(b)(2)(A) ..............................................................................................4

28 U.S.C. § 157(b)(2)(M) .............................................................................................4

28 U.S.C. § 157(b)(2)(O) ..............................................................................................4

28 U.S.C. § 1334 .........................................................................................................4

28 U.S.C. § 1408 .........................................................................................................4

28 U.S.C. § 1409 .........................................................................................................4

**RULES**                                                                                                    **Page**

Federal Rules of Bankruptcy Procedure 1007(d) .........................................................2

Federal Rules of Bankruptcy Procedure 2002 ..........................................................1, 4

Federal Rules of Bankruptcy Procedure 6004 ..........................................................1, 4

Federal Rules of Bankruptcy Procedure 6004(h) ........................................................16

Federal Rules of Bankruptcy Procedure 6006 ..........................................................1, 4

Federal Rules of Bankruptcy Procedure 6006(d) ........................................................16

Federal Rules of Bankruptcy Procedure 9014 ..........................................................1, 4

Local Bankruptcy Rule 2081-1(a)(10) .......................................................................1, 4

Local Bankruptcy Rule 6004-1 ..................................................................................1, 4

Local Bankruptcy Rule 9075-1 ..................................................................................1, 4

Local Bankruptcy Rule 9075-1(a)(6) .............................................................................2

**TO THE HONORABLE PETER H. CARROLL, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; SECURED CREDITORS; THE CREDITORS APPEARING ON THE LIST FILED IN ACCORDANCE WITH RULE 1007(D) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND PARTIES REQUESTING SPECIAL NOTICE:**

Debtor Gospel Light Publications (the "Debtor"), the debtor and debtor in possession in the above-captioned bankruptcy case (the "Bankruptcy Case") hereby moves this Court for entry of an order on an emergency basis, pursuant to sections 105, 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (F.R.B.P.), and Rules 2081-1(a)(10), 6004-1, and 9075-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California (L.B.R.), for approval of procedures to conduct a sale of the Debtor's membership interest in ZDL Holdings, LLC (the "Motion to Sell") .

Specifically, the Debtor seeks an order:

(a) Approving the sale procedures (the "Bid Procedures"), set forth in the order attached hereto as **Exhibit "A"** (the "Bid Procedures Order") in connection with the sale  of the Debtor's sixty-three percent membership interest in ZDL Holdings, LLC (the "ZDL Asset"),

(b) Authorizing the sale of the ZDL Asset pursuant to the terms of the asset purchase agreement titled "Ownership Interest Redemption Agreement" (the "ZDL APA") (substantially in the form attached hereto as **Exhibit "B"**), free and clear of all liens, claims, interests and encumbrances, to Pacific Resources International, LLC ("PRI" or "Purchaser"), or such other party making a higher and better bid, pursuant to 11 U.S.C.§§ 105 and 363(b), (f), and (m) (the "Sale");

(c) Scheduling an auction and hearing for the sale of the ZDL Asset (the "Sale Hearing");

1
2
3
4

(d) Approving the proposed form of the notices of the Sale Hearing, and related matters, substantially in the forms attached to the Bid Procedures Order as **Exhibit "2"**, and the manner of service of the same, and setting applicable deadlines; and

5

(e) Granting such other related relief as provided in the Bid Procedures Order.

6
7
8
9
10
11
12

The Motion to Sell is based on the attached "Memorandum of Points and Authorities," the concurrently-filed "Declaration of Dave Thornton, Chief Executive Officer, in Support of Emergency First Day Motions" (the "Thornton Declaration"), the "Notice of Emergency Motions" that will be filed and served once a hearing date for the Debtor's "First Day Motions" has been obtained from the Court, the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion to Sell.

13
14
15
16
17
18
19
20

As directed by the Court, the Debtor will give telephonic or facsimile notice of the date, time and location of the emergency hearing on the Motion to Sell to (a) the Office of the United States Trustee; (b) the creditors appearing on the list filed in accordance with F.R.B.P. 1007(d); (c) the Purchaser; and (d) any creditors asserting a security interest in the ZDL Asset immediately upon receipt of the hearing information from the Court.  To the extent necessary, the Debtor requests that the Court "order otherwise" pursuant to L.B.R. 9075-1(a)(6) and permit service of the Motion to Sell (in addition to the means of service set forth in such Local Bankruptcy Rule) by overnight delivery.

21

**WHEREFORE,** the Debtor respectfully requests that the Court enter an order:

22

(1) Granting this Motion to Sell in its entirety;

23

(2) Approving the Bid Procedures;

24
25
26

(3) Approving the ZDL APA and the sale of the ZDL Asset to the Purchaser (or other Successful Bidder(s)), free and clear of all liens, claims, encumbrances, and other interests, subject to the bidding/auction process proposed by the Debtor;

27

(4) Scheduling the Sale Hearing;

28

(5) Approving the proposed form of the notices of the Sale Hearing, and related matters, substantially in the forms attached to the Bid Procedures Order as **Exhibit "2"**, and the manner of service of the same, and setting applicable deadlines; and

(6) Granting such other related relief as provided in the Bid Procedures Order.

Dated:  August 10, 2015                    **MARGULIES FAITH, LLP**

                              By:    */s/ Jeremy W. Faith*
                                    CRAIG G. MARGULIES
                                    JEREMY W. FAITH
                                    NINA Z. JAVAN
                                    [Proposed] Attorneys for Gospel Light
                                    Publications, Chapter 11 Debtor and
                                    Debtor in Possession

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.**

3

<u>**JURISDICTION AND SUMMARY OF RELIEF REQUESTED**</u>

4     This Court has jurisdiction to consider the Motion to Sell[1] under 28 U.S.C. §§ 157

5 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and

6 (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.   By this

7 Motion to Sell, the Debtor requests entry of an order on an emergency basis, pursuant to

8 11 U.S.C. §§105, 363, and 365, F.R.B.P. 2002, 6004, 6006, and 9014, and L.B.R. 2081-

9 1(a)(10), 6004-1, and 9075-1, for approval of procedures to conduct a sale of certain of the

10 Debtor's assets (*i.e.*, the ZDL Assets) and for approval, at a subsequent hearing, of the

11 sale of the ZDL Assets to PRI or the highest bidder that complies with the applicable

12 procedures.

13

**II.**

14

<u>**GENERAL BACKGROUND**</u>

15     The Debtor commenced this case by filing a voluntary petition for relief under

16 Chapter 11 of the Bankruptcy Code on August 7, 2015 (the "<u>Petition Date</u>").  The Debtor

17 continues to carry out its business operations and manage its financial affairs as a debtor

18 in possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee, examiner, or committee

19 has been appointed in the Bankruptcy Case.

20

**III.**

21

<u>**STATEMENT OF FACTS**</u>

22   **A.    The Debtor and its Business Operations**

23     Founded in 1933, the Debtor is a mid-market Christian media company specializing

24 in the production of print and digital media educational resources to meet the needs of

25 church leaders throughout the world.  The Debtor is particularly well-known for its high-

26 quality Vacation Bible School and Sunday School curriculum materials.  The Debtor serves

27
_____

28     [1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Motion to Sell to which this Memorandum of Points and Authorities is annexed.

approximately 14,000 customers per year, through a combination of direct sales (via website and phone orders) and distributors.  A large portion of these customers are churches and schools.

The Debtor operates out of leased offices located at 1923 Eastman Avenue, Ventura, California 93003 (the "Offices") which it has occupied since February 2015.  As of the Petition Date, the Debtor has trimmed its head count to 14 employees, some of whom have been with the Debtor since the 1980s.  The Debtor's employees handle the Debtor's customer service, sales, marketing, and operations functions.

The Debtor's fulfillment and warehousing needs are met offsite by a third party, R.R. Donnelly & Sons ("RRD").  RRD provides warehousing, assembly and distribution services to the Debtor from a facility in Appleton, Wisconsin (the "Warehouse").  RRD also provides offsite printing services to the Debtor.

The Debtor's most significant assets are its Sunday School Curriculum (the "Sunday School Asset")[2], its Vacation Bible School Curriculum (the "Vacation Bible School Asset")[3], and its Ministry Resource Line (the "Ministry Asset").  The Sunday School Asset operates on a subscription model, with customers dependent on receiving new materials every three (3) months.  The materials for the next shipment of the Sunday School Asset arrived in the Warehouse at the end of July 2015, with shipment of the assembled materials to customers estimated to be completed by the end of August 2015.  Although it does not operate under the same model as the Sunday School Asset, customers of the Ministry Asset are also dependent upon continuous services and the availability of resources provided by the Debtor.

### B. Events Leading to Bankruptcy

A number of unanticipated occurrences during the last nine months, combined with a long term slowdown in the Christian publishing market, led to the Debtor's need for

---

[2]  The Sunday School Asset had 4,220 direct customers in 2014 and generated total net revenue of $3,664,125.

[3]  The Vacation Bible School Asset, which has impacted the lives of more than sixty-five million children since 1952, had 4,427 direct customers in 2014 and generated $2,055,396.00 in total net revenue.

1   Chapter 11 relief.  Prior to December of 2014, Crestmark Bank ("Crestmark") provided the

2   Debtor with working capital ranging from $1,000,000.00 to $3,000,000.00 annually.  In or

3   around early November 2014, Crestmark notified the Debtor that it did not believe the

4   Debtor would be able to satisfy certain loan covenants, which included retaining a

5   $1,000,000.00 cash balance at all times, and provided the Debtor with notice that

6   Crestmark would no longer provide working capital effective January 2015.  At that time,

7   the Debtor needed to find an alternate source of working capital to pay fulfillment invoices

8   related to its Vacation Bible School line which were coming due in January 2015.

9       In December of 2014, the Debtor and Super G Funding, LLC ("Super G") entered

10  into a short-term financing agreement whereby Super G provided the Debtor with a

11  business loan in the amount of $1,200,000.00 (the "Super G Loan").  The Super G Loan

12  allowed the Debtor to finalize the January 2015 production of the Vacation Bible School

13  publication.

14      Shortly after entering into the Super G Loan, one of the Debtor's largest customers,

15  Family Christian Stores, filed a Chapter 11 bankruptcy petition on February 11, 2015.[4]  As

16  a result of the Family Christian Stores' bankruptcy, the Debtor did not receive

17  approximately $143,000.00 in expected income, which it was forced to write off.

18      In addition to the loss of the Family Christian Stores revenue, an issue with the

19  Debtor's web developer also came to a head in February of 2015.  In October of 2014, the

20  Debtor retained Bit-Wizards Information Technology Solutions, Inc. ("Bit-Wizards") to

21  design a new, responsive website for the Debtor using a different software platform.  Bit-

22  Wizards originally estimated a project cost of approximately $160,000.00 and a projected

23  "Go-Live" date for the new site of January 1, 2015.  However, the new site was not

24  deployed until February 14, 2015, by which time Bit-Wizards had billed almost

25  $300,000.00, which was significantly over budget and more than the Debtor had

26  _____

27      [4] This case is pending before the United States Bankruptcy Court for the Western District of Michigan
    (Grand Rapids) as In re Family Christian, LLC, Case Number 15-00643-jtg (jointly administered with In re
28  Family Christian Holding, LLC, Case Number 15-00642 and In re FCS Giftco, LLC, Case Number 12-00644)

anticipated.  Further, the site continued to experience difficulties after deployment which, combined with the delayed launch, resulted in an estimated loss of $120,000.00 of anticipated revenue during the period from January 2015 to June 2015.[5]

Finally, in late April 2015, Insperity, the Debtor's employment services provider, changed the terms of the agreement with the Debtor by requiring the Debtor to begin pre-paying for payroll.  This unanticipated modification to the agreement with Insperity further harmed the Debtor's cash flow by necessitating an immediate payment of $85,000.

The combination of the foregoing events dropped the Debtor's cash balance in April 2015 to the point that it had to default on its payments under the Super G Loan.  The Debtor was also unable to make certain payments under its long term obligation to its warehouse and fulfillment company, RRD.  With the slowdown in the market for Christian publishing, the Debtor did not foresee a means of continuing to operate under its current business model.  Thus, by late April 2015, the Debtor began actively exploring a liquidation strategy in order to maximize the value of its assets for the benefit of creditors.

## C.    The Debtor's Future Plans

Through this Bankruptcy Case, the Debtor intends to operate its business to maintain the value of its assets while pursuing the sale of substantially all its assets.  The value of the Debtor's assets depends on the Debtor remaining a going concern through the Debtor's various sale cycles. In particular, the Sunday School Asset would be detrimentally impacted if the Debtor did not maintain its operations, as it is structured as a subscription model, with the most recent large shipment departing the Warehouse throughout August 2015.  If the Debtor were to discontinue business operations and close its doors, customers previously purchasing the Sunday School Asset would immediately seek alternate providers of such services and materials, thus diminishing the saleable

---

[5] Sales through the website are particularly important to the Debtor's cash flow since they are largely credit card sales, which result in immediate payment of the amounts due, rather than payment on credit terms (*e.g.,* 30-day invoicing).

1   value of the Sunday School Asset to the mere liquidation value of any existing inventory.[6]

2       While continuing operations as a debtor in possession, the Debtor will continue to

3   market its remaining assets.  The Debtor intends to propose a liquidating Chapter 11 Plan,

4   while selling certain assets in the near-term through Section 363 sales.

5       The Debtor has hired competent bankruptcy counsel to prepare its schedules, plans

6   to comply with the United States Trustee monthly reporting requirements, and will propose

7   a feasible chapter 11 plan of liquidation which will provide value to the estate for the benefit

8   of creditors.  The Debtor's Chapter 11 filing is made in good faith.

9       **D.  The Proposed Sale**

10      The Debtor has been actively involved in efforts to liquidate its various assets over

11  the last 8 months.  In December 2014, the Debtor's board of directors authorized its Chief

12  Executive Officer, Dave Thornton ("Mr. Thornton"), to explore the sale of the Debtor's

13  membership interest in ZDL Holdings, LLC, a North Carolina Corporation ("ZDL").  ZDL

14  does business in China publishing Christian literature and providing consulting services.

15  The Debtor owns a sixty-three percent (63%) membership interest in ZDL (*i.e.*, the ZDL

16  Asset).

17      Mr. Thornton approached multiple Christian publishers[7] that expressed an interest

18  in exploring this business opportunity.  Although a pre-petition sale of the ZDL Asset could

19  not be finalized, the Debtor was able to enter into an agreement (*i.e.*, the ZDL APA) to sell

20  the ZDL Asset to ZDL's thirty-seven percent (37%) co-owner, Pacific Resources

21  International, LLC (i.e., PRI).  Pursuant to the ZDL APA, which contemplates the instant

22  Bankruptcy Case, PRI will purchase the ZDL Asset for a total purchase price of

23  $175,000.00 (the "ZDL Purchase Price").  Of the ZDL Purchase Price, $100,000.00 has

24

25  _____

26      [6] The Debtor estimates that this would reduce the value of the Sunday School Assets to 5-10% of
their going concern value.

27      [7] Due to Non-Disclosure Agreements signed by the various parties, the specific companies
approached and/or whom seriously explored the possibility of purchase of the ZDL Asset are not identified

28  by name here.

EMERGENCY MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR ORDER APPROVING SALE OF
CERTAIN ASSETS - 8

already been paid to the Debtor as a good faith payment, and the remaining $75,000.00 is to be paid at closing.

By this Motion to Sell, the Debtor is proposing to sell its entire equity interest in ZDL. The ZDL Asset will be sold free and clear of all liens, claims, rights, interests, and encumbrances in accordance with section 363(b) and (f) of the Bankruptcy Code.  Outside of a plan, the Debtor believes that the consummation of the Sale to the Purchaser, or to a successful overbidder, will maximize the value of the ZDL Asset.

The following are the material terms of the proposed Sale to the Purchaser

**(i)**    **Purchase Price:** $175,000.

**(ii)**    **Deposit**:  A deposit of $100,000 (the "<u>Deposit</u>") in immediately available funds delivered to the Debtor at least two days prior to the Sale Hearing.

**(ii) Purchased Assets:** The Debtor's sixty-three percent (63%) membership interest in ZDL.

**E.    Proposed Bid Procedures**

The Bid Procedures are attached as **<u>Exhibit "1"</u>** to the Bid Procedures Order, and are summarized as follows:

(a) Participation Requirements

In order to participate in the bidding process and to otherwise be considered for any purpose hereunder, a person interested in the ZDL Asset (a "<u>Potential Bidder</u>") must first deliver (unless previously delivered) to the Debtor and its counsel an executed confidentiality agreement in form and substance acceptable to the Debtor and its counsel and proof of ability to perform which is satisfactory to the Debtor and its counsel, which may include, *inter alia*, a current bank statement evidencing proof of sufficient funds, contact names and numbers for verification of financing sources, or other evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction, and any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to

the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated transaction.

### (b) Designation as Qualified Bidder

A "Qualified Bidder" is a Potential Bidder that delivers the documents described above, and that the Debtor determines is (i) reasonably likely to submit a *bona fide* offer that would result in greater cash value being received for the benefit of the Debtor's creditors than under the ZDL APA, and (ii) able to consummate a sale if selected as a Successful Bidder.  Upon the receipt, from a Potential Bidder, of the information required, the Debtor shall determine, in its sole discretion, and notify the Potential Bidder with respect to whether such Potential Bidder is a Qualified Bidder.  The Purchaser (together with any assigns) is a Qualified Bidder and is deemed to satisfy all Bid Requirements (hereinafter defined).

### (c) Access to Due Diligence Materials

The Debtor will provide Potential Bidders with reasonable access to its books and records as they relate to the ZDL Assets, key personnel, officers, accountants and legal counsel for the purpose of conducting due diligence. The Debtor shall not be required to provide confidential or proprietary information to a Potential Bidder if the Debtor believes that such disclosure would be detrimental to the interests of the Debtor.  Only Potential Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due diligence access or additional non-public information.  If the Debtor determines that a Potential Bidder that has satisfied the Participation Requirements does not constitute a Qualified Bidder, then such Potential Bidder's right to receive due diligence access or additional non-public information shall terminate.  The Debtor will designate an employee or other representative to coordinate all reasonable requests for additional information and due diligence access from such Qualified Bidders.

///

///

(e) <u>Bidding Process</u>

The Debtor and its advisors shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence investigations, as permitted by the provisions above; (iii) receive offers from Qualified Bidders; and (iv) negotiate any offers made to purchase the ZDL Asset (collectively, the "<u>Bidding Process</u>").  The Debtor shall have the right to adopt such other rules for the Bidding Process (including rules that may depart from those set forth herein) that will better promote the goals of the Bidding Process.

(f) <u>Bid Deadline</u>

The Debtor proposes that the deadline for submitting bids by a Qualified Bidder be fourteen days prior to the Sale Hearing at 4:00 p.m. PST (the "<u>Bid Deadline</u>"), or such other date as determined by the Debtor.

(g) <u>Bid Requirements</u>

To be eligible to participate in the auction at the Sale Hearing, each Bid and each Qualified Bidder submitting such a Bid must be determined, by the Debtor, to satisfy each of the following conditions (the "<u>Bid Requirements</u>"): (i) each Bid, other than a Bid submitted by  the Purchaser, must be accompanied by a deposit (the "<u>Good Faith Deposit</u>") in the form of a certified check or cash payable to the order of the Debtor in an amount equal to $100,000.00; (ii) the consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtor; (iii) the aggregate consideration must equal or exceed the sum of the Purchase Price, plus at least $10,000.00 (the "<u>Initial Minimum Overbid Increment</u>"); (iv) a Bid must be irrevocable until the earlier of (a) closing of the transaction with the Successful Bidder, or (b) the date that the Sale Order has become final and non-appealable (the "<u>Termination Date</u>"); (v) the Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the ZDL APA; (vi) the Bid must include a commitment to close as soon as practicable after the date on which the Sale Order becomes final and non-appealable; (vii) a Bid may not be

conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the ZDL APA, unless the Debtor in its discretion otherwise agrees; (viii) a Bid must contain written evidence of a commitment for financing, or other evidence of the ability to consummate the sale satisfactory to the Debtor; and (ix) a Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment, and by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

A Bid received from a Qualified Bidder before the Bid Deadline that, in the Debtor's judgment, meets the above requirements and that satisfies the Bid Deadline requirement above shall constitute a "Qualified Bid." In the event that any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be refunded its Good Faith Deposit on or before the date that is seven (7) days after the entry of the Sale Order. The Debtor shall have the right to reject any and all bids that it believes do not comply with the Bid Procedures. For purposes hereof, the ZDL APA shall constitute a Qualified Bid and the Purchaser (together with any assigns) shall be deemed to be a Qualified Bidder that has satisfied all Bid Requirements.

(h) Auction

The Debtor will conduct an auction at the Sale Hearing to determine the highest and best bid with respect to the ZDL Asset in the event that there is a Qualified Bidder in addition to the Purchaser.

No later than the day prior to the commencement of the Sale Hearing, the Debtor will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by the Debtor in its discretion (the "Baseline Bid"); and (ii) provide copies of all submitted bids to all Qualified Bidders (excluding any Bidder Confidential Information).  If no higher and better offer is approved at the Sale Hearing, then the Purchaser will be deemed the

1 │ Successful Bidder, the ZDL APA will be the Successful Bid, and, at the Sale Hearing, the

2 │ Debtor will seek approval of and authority to consummate the Sale contemplated by the

3 │ ZDL APA.

4 │ **IV.**

5 │ **ARGUMENT**

6 │ **A. The Debtor's Proposed Sale of the ZDL Asset Should be Approved**

7 │     A debtor, after notice and a hearing, may use, sell, or lease property, other than in

8 │ the ordinary course of business. 11 U.S.C. § 363(b)(1).  A debtor's application of its sound

9 │ business judgment in the use, sale, or lease of property is subject to great judicial

10 │ deference.  See, e.g., In re Moore, 110 B.R. 924 (Bankr. C.D. Cal. 1990); In re Canyon

11 │ Partnership, 55 B.R. 520 (Bankr. S.D. Cal. 1985); see also Walter v. Sunwest Bank (In re

12 │ Walter), 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated

13 │ business justification for using, selling, or leasing the property outside the ordinary course

14 │ of business . . . whether the proffered business justification is sufficient depends on the

15 │ facts of the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should

16 │ consider all salient factors pertaining to the proceeding and, accordingly, act to further the

17 │ diverse interests of the debtor, creditors and equity holders, alike.").

18 │     In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a

19 │ transaction involving property of the estate generally should be approved where the debtor

20 │ or trustee can demonstrate "some articulated business justification for using, selling, or

21 │ leasing property outside of the ordinary course of business." In re Continental Airlines, Inc.,

22 │ 780 F.2d 1223, 1226 (5th Cir. 1986); accord In re Lionel Corp., 722 F.2d 1063, 1071 (2d

23 │ Cir. 1983); *Walter*, 83 B.R. at 19-20; In re Curlew Valley Assocs., 14 B.R. 506, 513-14

24 │ (Bankr. D. Utah 1981); Meyers v. Martin (In re Martin), 91 F.3d 389, 395 (3d Cir. 1996)

25 │ (approval where a sound business purpose exists).  Among other factors, courts should

26 │ consider the consideration to be paid, the financial condition and needs of the debtor, the

27 │ qualifications of the buyer, and whether a risk exists that the assets proposed to be sold

28 │

would decline in value if left in the debtor's possession.  See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.), 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light of impending deterioration of market value of debtor's assets).

It is the Debtor's business judgment that, after considering potential alternatives, the proposed Sale of the ZDL Asset is in the best interest of the Debtor, the Estate, and its creditors and stakeholders.  The proposed Sale will preserve a substantial portion of the Debtor's business as a going concern.  Additionally, the Debtor believes that the consideration to be paid by the Purchaser represents a fair and reasonable offer in light of all the terms of the proposed Sale, and as a result of the Debtor's postpetition marketing efforts, such offer (or any higher and better offer obtained through the proposed Bid Procedures and at the Sale Hearing) will provide maximum value to the Debtor under the current circumstances. Overall, the proposed Sale's benefits greatly exceed those of any liquidation which would lump the ZDL Asset into a larger parcel of assets to be sold.  The proposed Sale is supported by sound business reasons and is in the best interest of the Debtor and its Estate.

**B. The Sale of the ZDL Asset Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to 11 U.S.C. § 363(f) Should be Approved**

The Debtor requests that the Court approve the sale of the ZDL Asset free and clear of all liens, claims, encumbrances and interests (collectively, the "Interests"), to the extent that any exists, with any such Interests to attach to the sale proceeds with the same validity, enforceability, and priority, if any, as existed with respect to the ZDL Asset as of the Petition Date.  Section 363(f) of the Bankruptcy Code expressly authorizes a debtor to sell property outside the ordinary course of business "free and clear of any interest in such property of an entity" if any one of the five following conditions is met:

1      1. applicable non-bankruptcy law permits sale of such property free and clear of such

2  interest;

3      2. such entity consents;

4      3. such interest is a lien and the price at which such property is to be sold is greater

5  than the aggregate value of all liens on such property; and

6      4. such interest is in bona fide dispute; or

7      5. such entity could be compelled, in a legal or equitable proceeding, to accept a

8  money satisfaction of such interest.

9  11 U.S.C. § 363(f).  As section 363(f) of the Bankruptcy Code is written in the disjunctive,

10  any one of these five conditions provides authority to sell the ZDL Asset free and clear of

11  liens.  See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot), 94 B.R. 343, 345 (E.D.

12  Pa. 1988).

13      Under section 363(f)(2) of the Bankruptcy Code, a debtor may sell estate property

14  free and clear of liens, claims, interests, and encumbrances if the entity asserting the

15  interest consents.  Super G, which is the only entity asserting a security interest in the ZDL

16  Asset, consents to the proposed Sale to Purchaser, with Super G's lien against the ZDL

17  Asset to attach to the Sale proceeds.  Further, to the extent that any other party asserting

18  an Interest receives notice of the Motion to Sell and does not file a written objection hereto,

19  such party should be deemed to have consented to the proposed Sale of the ZDL Asset

20  free and clear of its asserted Interest(s).  See In re Channel One Communications, Inc.,

21  117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

22      In all events, the Debtor submits that any potential Interest will satisfy at least one of

23  the five conditions of section 363(f) of the Bankruptcy Code, and that any such Interest will

24  be adequately protected by either being paid in full at the time of closing, or by having it

25  attach to the net proceeds of the Sale, subject to any claims and defenses the Debtor may

26  possess with respect thereto. The Debtor has served or will serve any purported Interest

27

28
EMERGENCY MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR ORDER APPROVING SALE OF
CERTAIN ASSETS - 15

1  holders with notice of the Motion to Sell, and will serve notice of any Sale order approving

2  the relief requested by the Motion to Sell.

3       In sum, this Court should approve the Sale of the ZDL Asset to the Purchaser or the

4  Successful Bidder free and clear of Interests under Bankruptcy Code section 363(f), and

5  any potential claimants should be compelled to look exclusively to the proceeds of the Sale

6  for satisfaction of their claims.

7       **C.  Request for Waivers of Stay Under F.R.B.P. 6004(h) and 6006(d)**

8       In order to allow the immediate realization of value from the proposed Sale, the

9  Debtor respectfully requests that any orders on the Motion to Sell be effective immediately,

10  notwithstanding the fourteen-day stay imposed by F.R.B.P. 6004(h) and 6006(d).   As

11  expressed above, the Debtor's goal is to efficiently administer the estate's financial and

12  business affairs.   An expedient conclusion to the Sale process will inure to the benefit of

13  the estate and its creditors.  Waiver of any stay will permit the proposed Sale to take place

14  as early as possible under the circumstances.

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

## V.

## <u>CONCLUSION</u>

For the foregoing reasons, the Debtor respectfully requests that this Court enter an order: (i) granting the Motion to Sell; (ii) approving the Bid Procedures; (iii) approving the ZDL APA and the Sale of the ZDL Asset to the Purchaser (or a Successful Bidder), free and clear of all liens, claims, encumbrances and interests, subject to the bidding/auction process proposed by the Debtor; and (iv) granting such other and further relief as is just and proper under the circumstances.

Dated:  August 10, 2015                    **MARGULIES FAITH, LLP**

By:    */s/ Jeremy W. Faith*
          CRAIG G. MARGULIES
          JEREMY W. FAITH
          NINA Z. JAVAN
          [Proposed] Attorneys for Gospel Light
          Publications, Chapter 11 Debtor and Debtor
          in Possession

# Exhibit A

CRAIG G. MARGULIES (SBN 185925)
JEREMY W. FAITH (SBN 190647)
NINA Z. JAVAN (SBN 271392)
**MARGULIES FAITH, LLP**
16030 Ventura Boulevard, Suite 470
Encino, CA 91436
Telephone: (818) 705-2777
Facsimile: (818) 705-3777
Email: Craig@MarguliesFaithLaw.com
Email: Jeremy@MarguliesFaithLaw.com
Email: Nina@MarguliesFaithLaw.com

[Proposed] Attorneys for Gospel Light Publications
Chapter 11 Debtor and Debtor in Possession

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## NORTHERN DIVISION

In re

GOSPEL LIGHT PUBLICATIONS,

      Debtor and Debtor in
Possession.

Case No.: 2:13-bk-35495-BB

Chapter: 11

**ORDER:**

**(1) APPROVING BID PROCEDURES FOR THE SALE OF DEBTOR'S EQUITY INTEREST IN ZDL HOLDINGS, LLC;**

**(2) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE AND APPROVE THE FORM AND MANNER OF NOTICE RELATED THERETO; AND**

**(3) GRANTING RELATED RELIEF**

      Upon the motion (the "Motion to Sell")[1] of Debtor and Debtor in Possession Gospel Light Publications (the "Debtor") for entry of an order, pursuant to section 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (F.R.B.P.), *inter alia*, approving the Bid Procedures, approving the ZDL APA and the Sale of the ZDL Asset to Purchaser, free and clear of all liens, claims, encumbrances and interests, subject to the bidding/auction

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Motion to Sell.

1   process proposed by the Debtor; the Court having jurisdiction to consider the Motion to

2   Sell and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334;

3   consideration of the Motion to Sell and the relief requested therein being a core

4   proceeding pursuant to 28 U.S.C. § 157(b)(2); venue being proper pursuant to 28 U.S.C.

5   §§ 1408 and 1409; it appearing that the relief requested in the Motion to Sell is in the best

6   interest of the Debtor's estate, its creditors, and all other parties in interest; the Debtor

7   having provided appropriate notice of the Motion to Sell and the opportunity for a hearing

8   on the Motion to Sell under the circumstances such that no other or further notice with

9   respect to the approval of the Bid Procedures need be provided; the Court having

10  reviewed the Motion to Sell and having heard the statements in support of the relief

11  requested therein at a hearing before the Court; the Court having considered the Motion

12  to Sell, all pleadings and papers filed in connection with the Motion to Sell, including the

13  "Declaration of Dave Thornton, Chief Executive Officer, in Support of Emergency First

14  Day Motions" and the Memorandum of Points and Authorities filed in support thereof, and

15  the arguments of counsel and evidence proffered at the hearing on the Motion to Sell; and

16  after due deliberation and good and sufficient cause appearing therefor,

17  **THE COURT HEREBY MAKES THE FOLLOWING FINDINGS**:

18  a.  The bid procedures attached hereto as **Exhibit "1"** (the "Bid Procedures") are

19      reasonable and appropriate under the circumstances of this Chapter 11 case and

20      serve to maximize value for the benefit of the Debtor and its estate. The Bid

21      Procedures carefully balance the Debtor's interests in (i) inducing a buyer to

22      commit to purchase the ZDL Asset, (ii) preserving the opportunity to attract higher

23      and better offers, and (iii) expediting and facilitating the sale process.

24  b.  The Notice of Bid Procedures, Auction and Sale Hearing, substantially in the form

25      attached hereto as **Exhibit "2"** (the "Sale and Bid Procedures Notice"), provides

26      adequate notice concerning the proposed Sale, and is intended to provide due and

27      adequate notice of the relief sought in the Motion to Sell.

28  ///

2

**IT IS HEREBY ORDERED THAT**:

1.      The relief requested in the Motion to Sell is granted as set forth in this Bid Procedures Order;

2.      The Bid Procedures as set forth on the attached **Exhibit "1"** are approved in their entirety, and are incorporated herein by reference;

3.      The proposed Sale and the Sale Hearing (as defined below) shall be conducted in accordance with the provisions of this Bid Procedures Order and the Bid Procedures;

4.      By no later than fourteen (14) days following entry of this Bid Procedures Order, the Debtor shall serve, by first class U.S. or international mail, the Sale and Bid Procedures Notice on (a) the U.S. Trustee; (b) counsel for the official committee of unsecured creditors, if appointed (the "Committee"); (c) if a Committee has not been appointed by the date of the entry of this Bid Procedures Order, the creditors appearing on the list filed in accordance with F.R.B.P. 1007(d); (e) counsel for the Purchaser; (f) parties that have filed with the Court requests for notice of all matters in accordance with F.R.B.P. 2002; (g) all entities known to the Debtor to have asserted any liens or other interests in the ZDL Asset; and (h) all federal, state, and local regulatory, taxing and other authorities which have a reasonably known interest in the relief requested by the Motion to Sell, including the United States Attorney's office, all state attorneys general in states in which the Debtor and/or its network of dealers does business, and the Internal Revenue Service (collectively, the "Notice Parties");

5.      Any objection to the Sale or any other relief requested by the Motion to Sell shall be in writing, shall state the basis of such objection with specificity, and shall be filed with the Court no later than fourteen (14) days prior to the Sale Hearing at 4:00 p.m. (Pacific time), and served so as to be timely received by (a) counsel for the Debtor, (b) counsel for the Committee, if any (c) the United States Trustee, and (d) counsel for the Purchaser.  The Debtor's reply and any other response to any such objection shall be filed and served on (i) the objecting party, (ii) counsel for the Committee, if any (iii) the United

3

1   States Trustee, and (iv) counsel for the Purchaser no later than seven (7) days prior to the

2   Sale Hearing.

3       6.      Compliance with all of the foregoing notice provisions shall constitute

4   sufficient and reasonable notice of the Debtor's Sale of the ZDL Asset, and no additional

5   notice of the Sale, the contemplated transactions and other matters set forth in the Motion

6   to Sell need be given under the F.R.B.P., the L.B.R., or otherwise.

7       7.      If the Debtor receives more than one Qualified Bid (as defined in the Bid

8   Procedures),    an    auction    will    be    held    at    the    (the    "<u>Sale Hearing</u>")    on

9   _____, 2015, before the Honorable _____, United States

10  Bankruptcy Judge, at the United States Bankruptcy Court for the Central District of

11  California, 1415 State Street, Courtroom _____, Santa Barbara, California.  The Debtor

12  shall seek approval for the Successful Bid(s) and Backup Bid(s) and the Sale at the Sale

13  Hearing, which may be adjourned from time to time, without further notice.

14      8.      Counsel for the Debtor is authorized to hold and conduct any auction at the

15  Sale Hearing in accordance with the Bid Procedures.

16      9.      Notwithstanding the possible applicability of F.R.B.P. 6004, 6006 and 7062

17  or otherwise, the terms and conditions of this Bid Procedures Order shall be immediately

18  effective and enforceable upon its entry, and no automatic stay of execution shall apply to

19  this Bid Procedures Order.

20

21                                              # # #

22

23

24

25

26

27

28

4

# Exhibit 1

CRAIG G. MARGULIES (SBN 185925)
JEREMY W. FAITH (SBN 190647)
NINA Z. JAVAN (SBN 271392)
**MARGULIES FAITH, LLP**
16030 Ventura Boulevard, Suite 470
Encino, CA  91436
Telephone:  (818) 705-2777
Facsimile:  (818) 705-3777
Email:  Craig@MarguliesFaithLaw.com
Email: Jeremy@MarguliesFaithLaw.com
Email: Nina@MarguliesFaithLaw.com

[Proposed] Attorneys for  Gospel Light Publications
Chapter 11 Debtor and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**NORTHERN DIVISION**

| | |
|---|---|
| In re | Case No.:  9:15-bk-11586-PC |
| | Chapter:    11 |
| GOSPEL LIGHT PUBLICATIONS, | |
| | **BID PROCEDURES** |
| Debtor and Debtor in Possession. | |

Gospel Light Publications, as debtor and debtor in possession (the "Debtor"), has filed a chapter 11 case pending in the United States Bankruptcy Court for the Central District of California and administered under Case No. 9:15-bk-11586-PC.  By motion dated August 10, 2015 (the "Motion to Sell"),[1] the Debtor sought, among other things, approval of the process and procedures set forth below (the "Bid Procedures") through which it will determine the highest and best offer for the Debtor's sixty-three percent (63%) equity interest in ZDL Holdings, LLC, a North Carolina Limited Liability Company (the "ZDL Asset").   On _____, 2015, the Bankruptcy Court entered its order (the "Bid Procedures Order"), which, among other things, approved the Bid Procedures.

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Motion to Sell.

Exhibit 1
Exhibit A                                                                                              Page 23

On _____, 2015, or another continued date, the Bankruptcy Court shall conduct the Sale Hearing at which the Debtor shall seek entry of the Sale Order authorizing and approving the sale of the ZDL Asset (the "Sale") to the Purchaser or to one or more other Qualified Bidders, which offer (or offers) that the Debtor determines to constitute the highest and best offer.

## ZDL APA

On August 4, 2015, the Debtor entered into an asset purchase agreement titled "Ownership Interest Redemption Agreement" (the "ZDL APA") with Pacific Resources International, LLC ("PRI" or the "Purchaser"), pursuant to which the Purchaser proposes to acquire the ZDL Asset.  Pursuant to the ZDL APA, the Purchaser will provide consideration for the ZDL Asset as provided in the ZDL APA (the "Purchase Price").  The transaction contemplated by the ZDL APA is subject to competitive bidding as set forth herein, and approval by the Bankruptcy Court pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the "Bankruptcy Code").

## Assets for Sale or Disposition

The Debtor is offering for sale the ZDL Asset as set forth in the ZDL APA.  The ZDL Asset is the Debtor's sixty-three percent (63%) membership interest in ZDL Holdings, LLC, a North Carolina Corporation which does business in China publishing Christian literature and providing consulting services.

## Participation Requirements

In order to participate in the bidding process and to otherwise be considered for any purpose hereunder, a person interested in the ZDL Asset (a "Potential Bidder") must first deliver (unless previously delivered) to the Debtor and its counsel the following (the "Participation Requirements"):

1.  Confidentiality Agreement. An executed confidentiality agreement in form and substance acceptable to the Debtor and its counsel (a "Confidentiality Agreement"); and

2

Exhibit 1
Exhibit A                                                                Page 24

2. <u>Proof of Ability to Perform</u>. Prior to or at the time of presentation of a Bid, written evidence that the Debtor reasonably concludes demonstrates the Potential Bidder has the necessary financial ability to close the contemplated transaction. Such information may include, *inter alia*, the following:

   a. the Potential Bidder's current bank statement evidencing proof of sufficient funds;

   b. contact names and numbers for verification of financing sources;

   c. evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction;

   d. any such other form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtor demonstrating that such Potential Bidder has the ability to close the contemplated transaction.

### **Designation as Qualified Bidder**

A "Qualified Bidder" is a Potential Bidder that delivers the documents described in subparagraphs 1 and 2 above (under the heading "Participation Requirements"), and that the Debtor determines is reasonably likely (i) to submit a *bona fide* offer that would result in greater cash value being received for the benefit of the Debtor's creditors than under the ZDL APA and (ii) to be able to consummate a sale if selected as a Successful Bidder.

Upon the receipt from a Potential Bidder of the information required under subparagraphs 1 and 2 above, the Debtor shall determine, in its sole discretion, whether the Potential Bidder is a Qualified Bidder and notify the Potential Bidder of the Debtor's determination.

The Purchaser (together with any assigns) is a Qualified Bidder and is deemed to satisfy all Bid Requirements (hereinafter defined).

### **Access to Due Diligence Materials**

The Debtor will provide Potential Bidders with reasonable access to its books and records as they relate to the ZDL Assets, key personnel, officers, accountants and legal

1   counsel for the purpose of conducting due diligence. The Debtor shall not be required to

2   provide confidential or proprietary information to a Potential Bidder if the Debtor believes

3   that such disclosure would be detrimental to the interests of the Debtor.  Only Potential

4   Bidders that execute and deliver a Confidentiality Agreement are eligible to receive due

5   diligence access or additional non-public information.  If the Debtor determines that a

6   Potential Bidder that has satisfied the Participation Requirements does not constitute a

7   Qualified Bidder, then such Potential Bidder's right to receive due diligence access or

8   additional non-public information shall terminate.  The Debtor will designate an employee

9   or other representative to coordinate all reasonable requests for additional information and

10  due diligence access from such Qualified Bidders.  The Debtor is not responsible for, and

11  will bear no liability with respect to, any information obtained by Qualified Bidders in

12  connection with the sale of the ZDL Asset.

13  **Bidding Process**

14      The Debtor and its advisors shall: (i) determine whether a Potential Bidder is a

15  Qualified Bidder; (ii) coordinate the efforts of Bidders in conducting their due diligence

16  investigations, as permitted by the provisions above; (iii) receive offers from Qualified

17  Bidders; and (iv) negotiate any offers made to purchase the ZDL Asset (collectively, the

18  "Bidding Process").  The Debtor shall have the right to adopt such other rules for the

19  Bidding Process (including rules that may depart from those set forth herein) that will

20  better promote the goals of the Bidding Process, including modifications to bidding

21  requirements and applicable dates and deadlines.

22  **Bid Deadline**

23  **The deadline for submitting bids by a Qualified Bidder shall be**

24  **_____, 2015 at 4:00 p.m. (Pacific time) (the "Bid Deadline"), or such other**

25  **date as determined by the Debtor.**

26      Prior to the Bid Deadline, a Qualified Bidder that desires to make an offer,

27  solicitation or proposal (a "Bid") shall deliver written copies of its Bid by electronic mail to

28  counsel for the Debtor, Margulies Faith, LLP, 16030 Ventura Blvd., Ste. 470, Encino,

4

Exhibit 1
Exhibit A                                                                    Page 26

California 91436, Attn: Craig Margulies, craig@marguliesfaithlaw.com.   A Bid received after the Bid Deadline shall not constitute a Qualified Bid.

### **Bid Requirements**

To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor to satisfy each of the following conditions (the "<u>Bid Requirements</u>"):

<u>Good Faith Deposit</u>. Each Bid, other than a Bid submitted by the Purchaser, must be accompanied by a deposit (the "<u>Good Faith Deposit</u>") in the form of a certified check or cash payable to the order of the Debtor in an amount equal to $100,000.00.

<u>Minimum Overbid</u>. The consideration proposed by the Bid may include only cash and/or other consideration acceptable to the Debtor.  The aggregate consideration must equal or exceed the sum of the Purchase Price, plus $10,000.00 (the "<u>Initial Minimum Overbid Increment</u>").

<u>Irrevocable</u>. A Bid must be irrevocable until the earlier of (a) closing of the transaction with the Successful Bidder, or (b) the date that the Sale Order has become final and nonappealable (the "<u>Termination Date</u>").

<u>The Same or Better Terms</u>. The Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the ZDL APA.  A Bid must include a commitment to close as soon as practicable after entry of the Sale Order.

<u>Contingencies</u>. A Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the ZDL APA, unless the Debtor in its discretion otherwise agrees.

<u>Financing Sources</u>. A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the sale satisfactory to the Debtor with appropriate contact information for such financing sources.

<u>No Fees Payable to Qualified Bidder</u>. A Bid may not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment.  Moreover, by submitting a Bid, a Bidder shall be deemed to waive the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its Bid or the Bid Procedures.

5

Exhibit 1
Exhibit A                                                    Page 27

1  A Bid received from a Qualified Bidder before the Bid Deadline that, in the Debtor's

2  judgment, meets the above requirements and that satisfies the Bid Deadline requirement

3  above shall constitute a "Qualified Bid." In the event that any Potential Bidder is

4  determined by the Debtor not to be a Qualified Bidder, the Potential Bidder shall be

5  refunded its Good Faith Deposit on or before the date that is seven (7) days after the entry

6  of the Sale Order.  The Debtor shall have the right to reject any and all bids that it believes

7  do not comply with the Bid Procedures. For purposes hereof, the ZDL APA shall constitute

8  a Qualified Bid and the Purchaser (together with any assigns) shall be deemed to be a

9  Qualified Bidder that has satisfied all Bid Requirements.

10  **Auction**

11  The Debtor will conduct an auction at the Sale Hearing to determine the highest and

12  best bid with respect to the ZDL Asset in the event that there is a Qualified Bidder in

13  addition to the Purchaser.

14  No later than the day prior to the commencement of the Sale Hearing, the Debtor

15  will notify all Qualified Bidders of (i) the highest and best Qualified Bid, as determined by

16  the Debtor in its discretion (the "Baseline Bid"); and (ii) provide copies of all submitted bids

17  to all Qualified Bidders.  If no higher and better offer is approved at the Sale Hearing, then

18  the Purchaser will be deemed the Successful Bidder, the ZDL APA will be the Successful

19  Bid, and, at the Sale Hearing, the Debtor will seek approval of and authority to

20  consummate the Sale contemplated by the ZDL APA.

21  If there is an auction at the Sale Hearing, it shall be conducted according to the

22  following procedures:

23  ***Participation at the Auction***

24  Only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate

25  at the Auction.  During the auction, bidding shall begin initially with the highest Baseline

26  Bid and subsequently continue in minimum increments of $5,000.00, or such other

27  amount as determined by the Debtor.  Except as otherwise set forth herein, the Debtor

28

6

Exhibit 1
Exhibit A                                              Page 28

1  may conduct the Auction in the manner it determines will result in the highest and best

2  offer for the ZDL Asset.

3  ***The Debtor Shall Conduct the Auction***

4      The Debtor and its professionals shall direct and preside over the auction. At the

5  start of the auction, the Debtor shall describe the terms of the Baseline Bid. The

6  determination of which Qualified Bid constitutes the Baseline Bid shall take into account

7  any factors the Debtor reasonably deems relevant to the value of the Qualified Bid to the

8  estate (the "Bid Assessment Criteria"). All Bids made thereafter shall be "Overbids" and

9  shall be made and received on an open basis, and all material terms of each Bid shall be

10 fully disclosed to all other Qualified Bidders.  The Debtor reserves the right to conduct the

11 auction in the manner designed to maximize value based upon the nature and extent of

12 the Qualified Bids received.

13                    **Additional Procedures and Modifications**

14      The Debtor may adopt additional rules for the Auction at, or prior to, the Auction

15 that, in its reasonable discretion, will better promote the goals of the Auction.  All such

16 additional rules will be provided to each of the Qualified Bidders at the Auction.  Further,

17 at or before the Sale Hearing, the Debtor may impose such other terms and conditions to

18 the Sale and the Bid Procedures as the Debtor may reasonably determine to be in the

19 best interest of the Debtor's estate, its creditors and other parties in interest.

20      The Debtor may (a) determine which Qualified Bid, if any, is the highest and best

21 offer and (b) reject, at any time before entry of an order of the Bankruptcy Court approving

22 a Qualified Bid, any Bid that is (i) inadequate or insufficient, (ii) not in conformity with the

23 requirements of the Bankruptcy Code, the Bid Procedures, or the terms and conditions of

24 sale, or (iii) contrary to the best interest of the Debtor, its estate and creditors.

25                  **Consent to Jurisdiction as Condition to Bidding**

26      All Qualified Bidders at the Sale Hearing shall be deemed to have consented to the

27 core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection

28

7

Exhibit 1
Exhibit A                                                    Page 29

1   with any disputes relating to the Auction, and the construction and enforcement of each

2   Qualified Bidder's Contemplated Transaction Documents, as applicable.

3   **Closing the Auction**

4   Upon conclusion of the bidding, the Auction shall be closed, and the Debtor (in

5   consultation with the Committee) shall (i) identify the highest and best offer for the

6   Purchased Assets (the "Successful Bid") and the entity submitting such Successful Bid

7   (the "Successful Bidder"), (ii) identify the next highest or otherwise best offer after the

8   Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-

9   up Bidder"), and (iii) advise the Qualified Bidders of such determination. Upon seven (7)

10  days' prior notice by the Debtor, the Back-up Bidder selected by the Debtor must

11  immediately proceed with the closing of the transaction contemplated by the Back-up Bid

12  in the event that the transaction with the Successful Bidder is not consummated for any

13  reason. If the Purchaser's final bid is deemed to be highest and best at the conclusion of

14  the Auction, the Purchaser will be the Successful Bidder, and such bid, the Successful

15  Bid.

16  **Acceptance of Successful Bid**

17  The Debtor shall sell the ZDL Asset to the Successful Bidder upon the approval of

18  the Successful Bid by the Bankruptcy Court after the Sale Hearing. The Debtor's

19  presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not

20  constitute the Debtor's acceptance of such Qualified Bid. The Debtor will be deemed to

21  have accepted a Qualified Bid only when the Qualified Bid has been approved by the

22  Bankruptcy Court at the Sale Hearing. All interested parties reserve their right to object to

23  the Debtor's selection of the Successful Bidder, and the Debtor reserves the right to

24  contest any such objection, including on the ground that the objector lacks standing.

25  **"As Is, Where Is"**

26  The sale of the ZDL Asset shall be on an "as is, where is" basis and without

27  representations or warranties of any kind, nature, or description by the Debtor, its agents

28  or its estate except to the extent set forth in the ZDL APA or the purchase agreement of

8

Exhibit 1
Exhibit A                                                        Page 30

another Successful Bidder.  The Purchaser and each Qualified Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the ZDL Asset prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the ZDL Asset in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the ZDL Asset, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in these Bid Procedures or, (i) as to the Purchaser, the terms of the sale of the ZDL Asset shall be set forth in the ZDL APA, or (ii) as to another Successful Bidder, the terms of the sale of the ZDL Asset shall be set forth in the applicable purchase agreement.

### Free of Any and All Interests

Except as otherwise provided in the ZDL APA or another Successful Bidder's purchase agreement and subject to the approval of the Bankruptcy Court, all of Debtor's right, title and interest in and to the ZDL Asset subject thereto shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon and there against (collectively, the "Interests"), in accordance with section 363(f) of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the ZDL Asset.

### Sale Hearing

The Sale Hearing shall be conducted by the Bankruptcy Court on _____, 2015, before the Honorable _____, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Central District of California, 1415 State Street, Courtroom _____, Santa Barbara, California. The Sale Hearing may be adjourned from time to time, without further notice.

If the Successful Bidder fails to consummate an approved sale by the Termination Date, the Debtor shall be authorized, but not required, to deem the Back-up Bid, as disclosed at the Sale Hearing, the Successful Bid, and the Debtor shall be authorized, but

9

Exhibit 1
Exhibit A                                                    Page 31

1  not required, to consummate the sale with the Qualified Bidder submitting such Bid

2  without further order of the Bankruptcy Court.

3  ### **Return of Good Faith Deposit**

4         Any Good Faith Deposit of the Successful Bidder shall be applied to the purchase

5  price of such transaction at Closing.  Good Faith Deposits of Qualified Bidders other than

6  the Successful Bidder and Back-up Bidder shall not held in a non-interest-bearing escrow

7  or trust account until seven (7) days after entry of the Sale Order, and thereafter returned

8  to the respective bidders.  If a Successful Bidder (including any Back-up Bidder that has

9  become the Successful Bidder) fails to consummate an approved sale because of a

10  breach or failure to perform on the part of such Successful Bidder, the Debtor shall be

11  entitled to retain the Successful Bidder's Good Faith Deposit as part of its damages

12  resulting from such Successful Bidder's breach or failure to perform.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

10

Exhibit 1
Exhibit A                                                      Page 32

# Exhibit 2

1  CRAIG G. MARGULIES (SBN 185925)
   JEREMY W. FAITH (SBN 190647)
2  NINA Z. JAVAN (SBN 271392)
   **MARGULIES FAITH, LLP**
3  16030 Ventura Boulevard, Suite 470
   Encino, CA  91436
4  Telephone:  (818) 705-2777
   Facsimile:  (818) 705-3777
5  Email:  Craig@MarguliesFaithLaw.com
   Email: Jeremy@MarguliesFaithLaw.com
6  Email: Nina@MarguliesFaithLaw.com

7
   [Proposed] Attorneys for  Gospel Light Publications
8  Chapter 11 Debtor and Debtor in Possession

9
                **UNITED STATES BANKRUPTCY COURT**
10                **CENTRAL DISTRICT OF CALIFORNIA**
                        **NORTHERN DIVISION**
11

12  In re                              )  Case No. 9:15-bk-11586-PC
                                       )
13                                     )  Chapter 11
                                       )
14  GOSPEL LIGHT PUBLICATIONS,         )  **NOTICE OF BIDDING PROCEDURES,**
                                       )  **AUCTION AND SALE HEARING RE:**
15                                     )  **DEBTOR'S PROPOSED SALE OF**
                                       )  **EQUITY INTEREST IN ZDL**
16          Debtor and Debtor in       )  **HOLDINGS, LLC**
            Possession.                )
17                                     )
                                       )
18  _____   )

19      **PLEASE TAKE NOTICE** that, on August 10, 2015, Gospel Light Publications, the

20  above-captioned debtor and debtor in possession (the "Debtor") filed its "Emergency

21  Motion for Order (1) Approving Sale of Certain Assets Free and Clear of All Liens, Claims,

22  Encumbrances and Interests; (2) Approving Bid Procedures for the Sale and Auction of

23  Assets; and (3) Scheduling an Auction and Hearing to Consider the Sale and Approve the

24  Form and Manner of Notice Related Thereto" (the "Motion to Sell"),[1] and on August ____,

25  2015, the Bankruptcy Court entered its "Order (1) Approving Bid Procedures for the Sale

26  _____

27      [1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Motion to
28  Sell and any exhibits thereto.

    NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE HEARING RE: DEBTOR'S PROPOSED SALE OF
                        EQUITY INTEREST IN ZDL HOLDINGS, LLC

                    Exhibit 2
                    Exhibit A                                    Page 34

1 of Debtor's Equity Interest In ZDL Holdings, LLC; (2) Scheduling an Auction and Hearing

2 to Consider the Sale and Approve the Form and Manner of Notice Related Thereto; and

3 (3) Granting Related Relief" (the "<u>Bid Procedures Order</u>").  Pursuant to the Motion to Sell,

4 the Debtor seeks, *inter alia*, the Bankruptcy Court's approval of the sale of its sixty-three

5 percent (63%) equity interest in ZDL Holdings, LLC, a North Carolina Limited Liability

6 Company (the "<u>ZDL Asset</u>") to either the proposed buyer, Pacific Resources International,

7 LLC ("<u>PRI</u>" or the "<u>Purchaser</u>"), or to the successful purchaser of the ZDL Asset at an

8 auction to take place on August ___, 2015 (the "<u>Sale Hearing</u>"), free and clear of liens,

9 claims, encumbrances and other interests.

10    This Notice provides the following summary of the Bid Procedures approved by the

11 Bid Procedures Order.  A copy of the Bid Procedures is attached hereto as **Exhibit "1"**.  In

12 the event of any inconsistency or conflict between this Notice and the Bid Procedures

13 Order, the Bid Procedures Order shall control.

14                              <u>**Brief Summary of Bid Procedures**</u>

15    (i)    In order to participate in the bidding process, a person interested the ZDL

16 Asset (a "<u>Potential Bidder</u>") must first deliver (unless previously delivered) to the Debtor
and its counsel, among other documents, an executed confidentiality agreement, proof of

17 ability to perform, and other documentation as the Debtor may reasonably request.

18    (ii)    The Debtor will provide Potential Bidders with reasonable access to its books

19 and records with respect to the ZDL Assets, key personnel, officers, accountants and legal
counsel for the purpose of conducting due diligence.  The Debtor shall not be required to

20 provide confidential or proprietary information to a Potential Bidder if the Debtor believes

21 that such disclosure would be detrimental to the interests of the Debtor. The Debtor will
designate an employee or other representative to coordinate all reasonable requests for

22 additional information and due diligence access from such Qualified Bidders.

23    (iii)    The Debtor shall: (a) determine whether a Potential Bidder is a Qualified

24 Bidder; (b) coordinate the efforts of Bidders in conducting their due diligence investigations,
as permitted by the provisions above; (c) receive offers from Qualified Bidders; and (d)

25 negotiate any offers made to purchase the ZDL Asset.

26

27    (iv)    The Bid Deadline is August _____, 2015, at 4:00 p.m. (Pacific Time), or such
other date as determined by the Debtor.

28

NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE HEARING RE: DEBTOR'S PROPOSED SALE OF
EQUITY INTEREST IN ZDL HOLDINGS, LLC - 2

Exhibit 2
Exhibit A                                                                    Page 35

(v)     To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtor to satisfy each of the following, among other, conditions: (a) the Bidder must provide a Good Faith Deposit equal to $100,000.00; (b) the aggregate consideration must equal or exceed the sum of the Purchase Price proposed by the Purchaser, plus $10,000.00; (c) the Bid must be irrevocable until the earlier of (1) closing of the transaction with the Successful Bidder, or (2) the date that the Sale Order has become final and non-appealable; (d) the Bid must be on terms that, in the Debtor's business judgment, are substantially the same or better than the terms of the ZDL APA with PRI; (e) the Bidder must commit to close as soon as practicable after the date on which the Sale Order becomes final and non-appealable; and (f) the Bid may not be conditioned on obtaining financing or any internal approval or otherwise be subject to contingencies more burdensome than those in the ZDL APA, unless the Debtor in its discretion otherwise agrees.

(vi)    The Debtor will conduct an auction at the Sale Hearing to determine the highest and best bid with respect to the ZDL Asset in the event that there is a Qualified Bidder in addition to the Purchaser.  The Sale Hearing shall commence on August _____, 2015 at __:__ at the United States Bankruptcy Court located at 1415 State Street, Santa Barbara, California 93101 in Courtroom ____.  If no higher and better offer is obtained at through the bid process and the Sale Hearing, then the Purchaser will be deemed the Successful Bidder, the ZDL APA will be the Successful Bid, and, at the Sale Hearing, the Debtor will seek approval of, and authority to consummate, the Sale contemplated by the ZDL APA.

(vii)   The Sale Hearing shall be conducted according to certain procedures including the following: (a) only a Qualified Bidder that has submitted a Qualified Bid is eligible to participate in the auction at the Sale Hearing.  During the Sale Hearing, bidding shall begin initially with the highest Baseline Bid (defined in the Bid Procedures Order) and subsequently continue in minimum increments of $5,000.00, or such other amount as determined by the Debtor. Except as otherwise set forth herein, the Debtor may conduct the auction in the manner it determines will result in the highest and best offer for the ZDL Asset. The Debtor may adopt additional rules for the auction at or prior to the Sale Hearing that, in its reasonable discretion, will better promote the goals of the auction.

(viii)  Upon conclusion of the bidding, the auction shall be closed, and the Debtor shall identify the highest and best offer for the ZDL Asset (the "Successful Bid") and the entity submitting such Successful Bid (the "Successful Bidder"), and identify the next highest or otherwise best offer after the Successful Bid (the "Back-up Bid") and the entity submitting the Back-up Bid (the "Back-up Bidder").  The Debtor shall sell the ZDL Asset to the Successful Bidder upon the approval of the Successful Bid by the Bankruptcy Court after the Sale Hearing.

NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE HEARING RE: DEBTOR'S PROPOSED SALE OF
EQUITY INTEREST IN ZDL HOLDINGS, LLC - 3

Exhibit 2
Exhibit A                                                        Page 36

### The ZDL APA with PRI

The following are the material terms of the proposed Sale to the Purchaser under the ZDL APA:

**(i)**    **Purchase Price:** $175,000.00.

**(ii)**    **Deposit**:  A deposit of $100,000 (the "Deposit") in immediately available funds delivered to the Debtor at least two days prior to the Sale Hearing.

**(iii)**    **Purchased Assets:** The Debtor's sixty-three percent (63%) membership interest in ZDL.

**(iv)**    **Closing:** No later than the first business day after fourteen (14) calendar days following the entry of the order approving the Sale.

**(v)**    **Representations and Warranties**: Customary for a transaction of this kind. Except as specifically set forth in the ZDL APA, Purchaser will accept the ZDL Asset at the Closing "AS-IS," "WHERE-IS," and "WITH ALL FAULTS."

### The Sale Hearing

**PLEASE TAKE FURTHER NOTICE** that the Bankruptcy Court will conduct a hearing (the "Sale Hearing") to consider the proposed sale of the Purchased Assets to the Purchaser or other Successful Bidder, as set forth in the Motion to Sell, to be held on _____, 2015, before the Honorable Peter H. Carroll, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Central District of California, 1415 State Street, Courtroom ____, Santa Barbara, California. The Sale Hearing may be adjourned from time to time, without further notice.

**PLEASE TAKE FURTHER NOTICE** that the Bid Procedures annexed hereto shall govern the bidding process and the auction of the ZDL Asset. Any person who wishes to receive a copy of the Motion to Sell or the Bid Procedures Order shall make such request in writing to Margulies Faith, LLP, 16030 Ventura Blvd., Ste. 470, Encino, California 91436, Attn: Craig G. Margulies.

///

NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE HEARING RE: DEBTOR'S PROPOSED SALE OF
EQUITY INTEREST IN ZDL HOLDINGS, LLC - 4

Exhibit 2
Exhibit A                                                                          Page 37

1

## Objections

2  Objections to the relief requested by the Motion to Sell (other than in respect to the

3  Bid Procedures and other relief previously granted by the Court in the Bid Procedures

4  Order) shall be set forth in writing and shall specify with particularity the grounds for such

5  objections or other statements of position, and shall be filed with the Court by 4:00 p.m.

6  (Pacific time) on _____, 2015, and shall be served so as to be received by that same

7  date and time on: (i) counsel for the Debtor, Margulies Faith, LLP, 16030 Ventura Blvd.,

8  Ste. 470, Encino, California 91436, Attn: Craig G. Margulies; (ii) counsel for the Purchaser,

9  Blane & Wilson, PLLC, Attn: James L. Blane,  1057 E. Morehead Street, Ste. 100,

10  Charlotte, North Carolina 28204; (iii) counsel for the Committee (if any); and (iv) the Office

11  of the U.S. Trustee.

12

## Closing

13  The closing of the Sale and the other transactions contemplated under the ZDL APA

14  shall occur in accordance with the terms and conditions of the ZDL APA.

15

16  **PLEASE TAKE FURTHER NOTICE** that all requests for information concerning the

17  ZDL Asset and all requests for information concerning the Bid Procedures, should be

18  directed in writing to Margulies Faith, LLP, 16030 Ventura Blvd., Ste. 470, Encino, California

19  91436, Attn: Craig G. Margulies.

20  Dated:                    **MARGULIES FAITH, LLP**

21

22                         By:    _/s/_____

23                              CRAIG G. MARGULIES
                              JEREMY W. FAITH
24                              NINA Z. JAVAN
                              [Proposed] Attorneys for Gospel Light
25                              Publications, Chapter 11 Debtor and
                              Debtor in Possession

26

27

28

NOTICE OF BIDDING PROCEDURES, AUCTION AND SALE HEARING RE: DEBTOR'S PROPOSED SALE OF
EQUITY INTEREST IN ZDL HOLDINGS, LLC - 5

Exhibit 2
Exhibit A                                    Page 38

# Exhibit B

## CONSENT of MANAGERS and MEMBERS
## of ZDL HOLDINGS, LLC
## to ACTION WITHOUT MEETING

We, the undersigned, being all of the Managers and Members of **ZDL HOLDINGS, LLC**, a limited liability company duly organized under the laws of the State of North Carolina (the "**Company**"), do hereby adopt the following resolutions by acknowledging in writing our consent thereto:

### Approval of Ownership Interest Redemption Agreement

**WHEREAS**, the Members and Managers of the Company desire for the Company to redeem ALL of its Ownership Interest in the Company owned by **GOSPEL LIGHT PUBLICATIONS**, a California Corporation (hereinafter "**GL**"), (sixty-three percent (63%), pursuant to the terms of that certain Ownership Interest Redemption Agreement attached hereto as Exhibit "A" (the "**Agreement**"). The redemption of the Ownership Interests of GL pursuant to the Agreement shall be referred to as the "**Redemption.**"

**WHEREAS**, following the Redemption, GL will have no ownership Interest in the Company, and PRI shall own one hundred percent (100%) of the Ownership Interest in the Company.

**NOW, THEREFORE, BE IT RESOLVED**, that the Redemption pursuant to the terms and conditions set forth in the Agreement is hereby authorized, confirmed, ratified, and unanimously approved by the affirmative vote of the Members and Managers.

**BE IT FURTHER RESOLVED**, that the Company is hereby authorized to execute, deliver, and perform the Agreement in accordance with its terms, and Dwight E. Nordstrom is authorized and directed as Manager to execute any all documents necessary.

**BE IT FURTHER RESOLVED**, that all other acts, steps and proceedings taken by the Managers of the Company in connection with the adoption of the Agreement, including all acts, steps and proceedings taken pursuant to the terms of or in connection therewith prior to the date hereof be, and they hereby are, in all respects ratified, confirmed and approved.

**BE IT FURTHER RESOLVED**, that the Managers be, and each of them hereby is, authorized and directed to take or cause to be taken any and all such other and further action as may be necessary, appropriate or convenient to implement and carry out the full intent and purposes of the foregoing resolutions, to execute any and all documents that may be necessary or practicable in connection therewith, and to enter into any acts as may be necessary to fully effectuate these resolutions and the Agreement.

**NOW, THEREFORE, BE IT RESOLVED**, that the Redemption of GL's interest as set forth in the Agreement is hereby authorized, confirmed, ratified, and unanimously approved by the affirmative vote of the Members and Managers.

The undersigned do unanimously consent that the action set forth in the foregoing preambles and resolutions shall have the same force and effect as if taken at a duly constituted meeting of the Managers and Members of the Company.

**IN WITNESS WHEREOF**, each party hereto in his capacity as either a Manager or Member of the Company does hereby consent to, ratify and confirm the above resolutions by affixing his signature below, effective _____August_____ _4_, 2015.

**MEMBERS**:

**PACIFIC RESOURCES INTERNATIONAL, LLC**

By: _____

      DWIGHT E. NORDTROM, Manager    (SEAL)

**GOSPEL LIGHT PUBLICATIONS**

By: _____

      DAVID THORNTON, Chief Executive Officer  (SEAL)

**MANAGERS**:

_____

DWIGHT E. NORDTROM        (SEAL)

_____

DAVID THORNTON        (SEAL)

**EXHIBIT "A"**

OWNERSHIP INTEREST REDEMPTION AGREEMENT

[See Attached]

## OWNERSHIP INTEREST REDEMPTION AGREEMENT

**THIS OWNERSHIP INTEREST REDEMPTION AGREEMENT** (this "Agreement") is made and entered into effective this _____4th_____ day of _Augus t_____, 2015, (the "Effective Date"), by and among **GOSPEL LIGHT PUBLICATIONS**, a California Corporation (hereinafter "GL"); **PACIFIC RESOURCES INTERNATIONAL, LLC** a North Carolina limited liability company (hereinafter "PRI"); and **ZDL HOLDINGS, LLC** a North Carolina limited liability company (hereinafter the "Company").

**WHEREAS**, as of the Effective Date and immediately prior to the transactions contemplated in this Agreement, GL owns sixty-three percent (63%) ownership interest in Company (with said ownership interest being redeemed referred to as the **"GL Ownership Interest"**), and PRI owns thirty-seven percent (37%) ownership interest in Company (with said ownership interest being sometimes referred to as the **"PRI Ownership Interest"**),; and

**WHEREAS**, prior to closing of the transaction contemplated by this Agreement, GL will file a bankruptcy petition under Chapter 11 of Title 11 of the United States Bankruptcy Code (the **"Bankruptcy Case"**) in the Bankruptcy Court for the Central District of California (the **"Bankruptcy Court"**); and

**WHEREAS**, the Bankruptcy Case shall be filed by no later than August 7, 2015 (the date of the filing referred to herein as the **"Petition Date"**); and

**WHEREAS**, GL desires to sell to the Company, and the Company desires to redeem from GL, all of the GL Ownership Interest (legal and equitable) in the Company in exchange for the consideration described herein; and

**WHEREAS**, upon closing of the transaction contemplated by this Agreement, by virtue of the redemption contemplated hereby, PRI will own all one hundred percent (100%) of the outstanding ownership interest in the Company; and

**WHEREAS**, the Company and PRI are sometimes hereinafter collectively referred to as the **"Company Parties"**.

**NOW, THEREFORE**, in consideration of the promises and the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties do hereby mutually agree as follows:

1.00    **Redemption of the Ownership Interest**.

1.10    At the Closing (as defined hereinbelow)and subject to the terms and conditions of this Agreement, in exchange for the consideration described in Paragraph 1.20 hereof, GL shall sell, assign and transfer to the Company, and the Company shall purchase and redeem from GL, the GL Ownership Interest , and GL shall withdraw from membership in the Company. GL sell, assign, and transfer the GL Ownership Interest to the Company free and clear of all claims, liens, security interests, pledges, restrictions, charges, contracts, rights of first refusal, options, demands, or other encumbrances of any kind ("**Liens**"). As a result of such redemption and withdrawal, effective as of the Closing, GL, shall no longer be a member of the Company and, except as otherwise set forth herein, shall have no right, title or interest in or to the Company.

1.20    In consideration of the GL's sale of the GL Ownership Interest to Company, Company shall pay to GL the sum of One Hundred Seventy-Five Thousand US Dollars ($175,000.00) as follows:

1.21    One Hundred Thousand US Dollars ($100,000.00) (the "**Deposit**") has been paid April 28, 2015.

1.22    Seventy-Five Thousand US Dollars ($75,000.00) shall be paid at the Closing (the "**Closing Payment**").

1.30    The payments made pursuant to Subparagraphs 1.21, and 1.22, above are distributions made in liquidation of the GL Ownership Interest and are intended as distributions pursuant to Section 736(b) of the Internal Revenue Code (hereinafter the "**Code**"). Reference to any particular provision of the Code shall mean that provision of the Code at the date hereof and any succeeding provision of the Code.

1.40    It shall be deemed that the redemption of the GL Ownership Interest occurred at 12:01am Eastern Standard Time on January 1, 2015. For the avoidance of doubt, GL shall not receive any distributions or guaranteed payments from the Company for the calendar year 2015 or any subsequent years. Notwithstanding the provisions of the Amended and Restated Operating Agreement of the Company, as amended, or any subsequent operating agreement of the Company, GL shall not be allocated any items of taxable income, gain, loss or deduction from the Company for the calendar year 2015 or any subsequent years.

1.50    This Agreement shall be subject to approval by the Bankruptcy Court with jurisdiction over the Bankruptcy Case approving the sale of the GL Ownership Interest free and clear of liens and encumbrances. GL shall file a motion with the Bankruptcy Court (the "**Sale**

**Motion"**) to confirm this Agreement by way of entry of an order by the Bankruptcy Court pursuant to 11 U.S.C. Section 363 (the **"Bankruptcy Approval Order"**).  GL shall file the Sale Motion within 2 calendar days of  the later of: (1) execution of this Agreement; and (2) the Petition Date.  The sale of the GL Ownership Interest to PRI shall be subject to GL's receipt of higher and better bids through and including the Bankruptcy Court hearing set in connection with the Sale Motion and subject to the Operating Agreement of ZDL Holdings, LLC.

2.00     **Closing**. Upon entry by the Bankruptcy Court of the Bankruptcy Approval Order and the passage of sufficient time so that said Order becomes final and is no longer appealable, the closing of the transactions contemplated herein shall take place as soon as practicable after entry of the Bankruptcy Approval Order, but no later than the first business day after fourteen (14) calendar days following the entry of the Bankruptcy Approval Order (the **"Closing"**).   The Closing shall occur by the following deliveries at Closing:

2.10     GL shall deliver to the Company (a) an Ownership Interest Power in the form attached hereto as Exhibit "A" (the **"Ownership Interest Power"**), duly executed, (b) an executed copy of this Agreement, (c) the Bankruptcy Approval Order authorizing the transfer of the GL Ownership Interest free and clear of any and all liens and encumbrances, including any lien asserted by Super G Funding, LLC dba BizCash (**"Super G"**), and (d) such other documents as may be reasonably required by Company to effect a valid transfer and redemption of the GL Ownership Interest by GL;

2.20     The Company Parties shall deliver to GL an executed copy of this Agreement; and

2.30     The Company shall deliver to GL the amount required as Closing Payment.

3.00     **Representations and Warranties of GL**. GL hereby represents and warrants as follows:

3.10     GL is the sole owner of the GL Ownership Interest being sold hereunder. The GL Ownership Interest represents GL's entire right, title and interest in and to the Company and its assets.

3.20     Subject to Bankruptcy Court approval contemplated in Section 1.50 herein, GL has the full right, power and authority to enter into, and to execute and deliver, this Agreement and the Ownership Interest Power, to sell, transfer, assign and deliver the GL Ownership Interest pursuant to the terms of this Agreement, to enter into the other transactions contemplated herein, and otherwise to perform its obligations under this Agreement. Upon Closing, GL shall convey and transfer to the Company valid and marketable title to the GL Ownership Interest, free and clear of all Liens.

3.30    Super G is the sole creditor of GL that has asserted a security interest in the GL Ownership Interest.

3.40    Neither GL's execution of, nor its performance of its obligations under, this Agreement constitutes or will constitute a breach or default of any written or oral agreement, contract, indenture, or other obligation to which GL is a party or otherwise bound.

3.50    This Agreement constitutes GL's legal, valid and binding obligations, enforceable against GL in accordance with its terms, except as enforceability may be limited by bankruptcy, reorganization, moratorium or similar laws affecting the enforceability of creditors' rights generally and rules of law governing specific performance, injunctive relief and other equitable remedies.

3.60    Other than GL's grant to Super G of a security interest in the GL Ownership Interest, GL has not prior to the execution hereof, conveyed or assigned or otherwise alienated its GL Ownership Interest.

3.70    The representations and warranties of GL contained herein shall survive the Closing until the expiration of all applicable statutes of limitations.

4.00    **<u>Representations and Warranties of Company Parties.</u>**

4.10    Company hereby represents and warrants to GL as follows:

4.11    Company has the full right, power and authority to enter into, and to execute and deliver, this Agreement. Company has the full right, power and authority to purchase and redeem the GL Ownership Interest pursuant to the terms of this Agreement.

4.12    Neither Company's execution of, nor its performance of its obligations under, this Agreement, constitutes or will constitute a breach or default of any written or oral agreement, contract, indenture, trust or other obligation to which Company is a party or otherwise bound.

4.13    This Agreement constitutes Company's legal, valid and binding obligations, enforceable against Company in accordance with its terms, except as enforceability may be limited by bankruptcy, reorganization, moratorium or similar laws affecting the enforceability of creditors' rights generally and rules of law governing specific performance, injunctive relief and other equitable remedies.

4.14    No consent, waiver or approval of, or prior filing with or notice to, or other action by, any governmental body or agency or any other third party is required in connection with such Company's execution and delivery of this Agreement or the consummation by Company of the transactions contemplated herein.

4.20    PRI hereby represents and warrants to GL as follows:

4.21    PRI has the full right, power and authority to perform its obligations specified under this Agreement.

4.22    PRI's obligations under this Agreement are legal, valid and binding obligations, enforceable against PRI in accordance with their terms, except as enforceability may be limited by bankruptcy, reorganization, moratorium or similar laws affecting the enforceability of creditors' rights generally and rules of law governing specific performance, injunctive relief and other equitable remedies.

4.30    The representations and warranties of each Company Party contained herein shall survive the Closing until the expiration of all applicable statutes of limitations.

5.00    **Confidentiality/Non-Competition**. As partial consideration of the redemption price paid by Company herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, GL hereto intending to be legally bound, agrees as follows:

5.10    **Definitions**. As used herein, the following terms shall have the following meanings:

5.11    "Compete" means to offer to perform or provide, within the Restricted Territory, on behalf of GL or any other Person or entity, any services similar to or the same as the Products or Services (as hereinbelow defined) offered by Company as of the Effective Date.

5.12    "Confidential Information" means any information which (a) is, or is designed to be, used in the business of Company or a Client of Company or supplier of Company, and (b) is private or confidential in that it is not generally known or available to the public, and shall include, but shall not be limited to, any client lists, studies, policies, types of equipment used, business procedures, price lists, Company's financial information, sales plans, software, surveys or plans of Company or a Client or supplier of Company, and any programs, products, pattern, algorithms and product designs now or hereafter owned by, or licensed or franchised to, Company or a Client or supplier of Company, whether or not such information is labeled "confidential"; provided that, "Confidential Information" will be deemed to exclude any particular information that (i) was or is made known to GL by a third party having the legal right

to do so; (ii) is or becomes publicly known without violation of this Agreement; or (iii) is required to be disclosed pursuant to law or in response to an official governmental or law enforcement agency investigation or valid order or subpoena of a court or governmental authority, provided that written notice of such required disclosure is provided by GL to Company as soon as practicable.

5.13    "Directly or Indirectly" includes, without limitation, GL:

(i) Acting as an officer, director, independent contractor, employee, consultant, agent, shareholder, partner, member or manager of, or for, any Person who Competes with Company;

(ii) Communicating to any Person who Competes with Company information that assists such Person to Compete with Company, including, but not limited to, the name or address of any Client of Company, or any financial information concerning any Client of Company.

5.14    "Person" shall mean any individual or individuals, corporation, partnership, limited liability company, agency, fiduciary, association, trust or other entity.

5.15    "Products and Services" shall mean any products and/or services Company provides or offers to its clients.

5.16    "Restricted Term" means the period from the Effective Date through the third anniversary of such date.

5.17    "Restricted Territory" means those states and countries in which Company conducted business as of the Effective Date of this Agreement.

5.20    **Non-Disclosure of Confidential Information**. GL acknowledges that by reason of its past association with Company (including its officers and agents having served as a Manager of Company), it has had access to certain Confidential Information of Company (including without limitation customer lists, pricing policies, financial information, processes and business methods). GL acknowledges that such Confidential Information is the property of Company and GL agrees that it has not and will not Directly or Indirectly: (i) use such Confidential Information, (ii) reveal or disclose any of such Confidential Information to any Person, or (iii) remove or aid in the removal from the premises of Company any of such Confidential Information or any material which relates thereto.

The provisions of this Paragraph shall survive the execution of this Agreement and the Closing with respect to this Redemption Agreement.

5.30 **Covenant Not to Compete**. GL acknowledges and agrees that, as of the Effective Date, Company provides the Products and Services. GL further agrees that:

5.31 GL shall not Compete with Company regarding any Products and Services in the Restricted Territory during the Restricted Term.

5.32 In the event that any provision of this Paragraph or any word, phrase, clause, sentence or other portion thereof (including, without limitation, the geographical and temporal restrictions contained herein) should be held to be unenforceable or invalid for any reason, such provision or portion thereof shall be modified or deleted in such a manner as to make the provisions hereof, as modified, legal and enforceable to the fullest extent permitted under applicable law, and in lieu thereof, there shall be substituted a provision as identical in nature as to such illegal, invalidated or unenforceable provision as possible while said substituted provision will remain legal, valid and enforceable.

The provisions of this Paragraph shall survive the execution of this Agreement and the Closing with respect to this Redemption Agreement.

6.00 **Acknowledgement of Reasonableness**. GL agrees that the covenants set forth in Paragraphs 5.00 through 5.32, including without limitation, the Restricted Term, the Restricted Territory, and the restrictions on competition by GL, are reasonable in scope and duration given the real and potential competition encountered by Company and reasonably expected to be encountered by Company. GL agrees that the covenants as set forth herein are no broader than is necessary to protect the legitimate business interests of Company and are not unduly burdensome to GL.

7.00 **No Disparagement**. For a period from the Effective Date through the fifth anniversary of the Effective Date, GL, PRI, and Company agree that each of them shall refrain at all times, from making any denigrating or derogatory statements concerning the other or any Product and Service of the other, to any Person or governmental or regulatory body or agency, whether or not such denigrating or derogatory statements shall be true or be based on acts or omissions which are learned by the other from and after the date hereof or on acts or omissions which occur from and after the date hereof, or otherwise. A statement shall be deemed denigrating or derogatory to any Person if it: (a) materially and adversely harms GL, PRI, or Company, as applicable, with respect to their businesses, clients, lenders or licensing, rating or regulatory entities and/or (b) has the effect of or potential effect of resulting in civil liability of a party to this Agreement unless such statement is made in an action to enforce the terms of this Agreement. This Paragraph does not apply to statements or disclosures made by any party pursuant to a requirement of law or in response to an official governmental or law enforcement agency investigation or valid order or subpoena of a court or governmental authority, provided

that written notice of such required disclosure is provided by GL, PRI, or Company to the other as soon as practicable.

The provisions of this Paragraph 7.00 shall survive the execution of this Agreement and the Closing with respect to the Redemption Agreement.

8.00    **Injunctive Relief and Damages**. In the event that any party hereto violates or breaches any provision of this Agreement applicable to it, each other party hereto that is intended by the express terms of such provision to benefit from such provision shall be entitled to enjoin such violation or breach and any further violation or breach of such provision, in each case without proving actual damages, as well as to receive an equitable accounting of earnings, profits, and other benefits arising from such violation, which rights shall be cumulative and in addition to any other remedies to which such other party may be entitled. Each party acknowledges that any breach of this Agreement will result in irreparable harm to the other parties hereto.

If any court determines that any of the restrictive covenants contained herein, or any part thereof, are unenforceable because of the duration or geographic scope of such provisions, such court shall have the power, and the parties hereby request the court to exercise such power, to modify such provision, and, in its modified form, such provision shall then be enforceable.

The rights and remedies conferred in this Agreement shall not be considered exclusive of any other rights or remedies available, but each of such rights and remedies shall be cumulative and shall be in addition to any other rights and remedies now or hereafter available at law or in equity. Any right or power may be exercised from time to time and as often as may be deemed expedient.

9.00    **Releases**.

9.10    **Release of PRI and Company**. GL has existing creditors, the claims of whom have not yet been satisfied. Some of GL's creditors have encumbered GL's assets while others are unsecured. For and in consideration of the terms and provisions of this Agreement, including, without limitation, the release of GL and the GL Ownership Interest as described in Paragraph 9.20 hereof GL, on behalf of itself and its successors, assigns, agents, and representatives, hereby agrees to and hereby does:

9.11    Fully release, acquit, exonerate, and forever discharge, and does hereby fully release, acquit, exonerate, and forever discharge, each of the Company Parties and their personal representatives, successors, assigns, agents, members, managers, officers, directors, shareholders, partners, employees, principals, and representatives, of and from any and all

manner of suits, proceedings, claims, demands, invoices, debts, actions, charges, fees, expenses, losses, liabilities, damages, obligations, costs, claims for costs, attorneys fees, or causes of actions of any kind or character, whether brought by GL or on behalf of GL, which GL might have had, might now have, might claim to have, or that might subsequently accrue to GL, whether fixed or contingent, liquidated or unliquidated, known or unknown, direct or consequential, latent or patent, matured or un-matured, discoverable or undiscoverable, statutory, tortious, contractual or otherwise, whether in law or in equity, on account of, relating to, in any manner connected with, or arising in any way out of, whether directly or indirectly, the ownership or membership of the Company by GL or Company Parties, the ownership or operation of the Company, any amounts owed from or to GL to or from any of the Company Parties, any disputes related to the Company, or any other transaction, interaction, agreement, contract, or relationship between or among any of the Company Parties and GL, whether or not related to any of the foregoing; and

9.12    Notwithstanding the foregoing, no agreement, term, provision, covenant, representation, warranty, or other obligation made pursuant to this Agreement, is hereby released, acquitted, exonerated, or discharged.

9.20    **Release of GL**. For and in consideration of the terms and provisions of this Agreement, including, without limitation, the promises and covenants of GL to release the Company Parties described in Paragraph 9.10 hereof, each of the Company Parties hereby agrees on behalf of themselves, their successors, assigns, agents, members, managers, officers, directors, shareholders, partners, employees, principals, and representatives to fully release, acquit, exonerate, and forever discharge, and does hereby fully release, acquit, exonerate, and forever discharge GL from any and all manner of suits, proceedings, claims, demands, invoices, debts, actions, charges, fees, expenses, losses, liabilities, damages, obligations, costs, claims for costs, attorney's fees, or causes of actions of any kind or character, whether brought by any of the Company Parties or on behalf of any of the Company Parties, which any of the Company Parties might have had, might now have, might claim to have, or that might subsequently accrue to any of the Company Parties, whether fixed or contingent, liquidated or unliquidated, known or unknown, direct or consequential, latent or patent, matured or un-matured, discoverable or undiscoverable, statutory, tortious, contractual or otherwise, whether in law or in equity, on account of, relating to, in any manner connected with, or arising in any way out of, whether directly or indirectly, the ownership or membership of the Company by GL, the ownership or operation of the Company, any amounts owed from or GL to or from any of the Company Parties, any disputes related to the Company, or any other transaction, interaction, agreement, contract, or relationship between or among any of the Company Parties and GL, whether or not related to any of the foregoing.

Notwithstanding the foregoing, no agreement, term, provision, covenant, representation, warranty, or other obligation made pursuant to this Agreement, is hereby released, acquitted, exonerated, or discharged.

10.00    **Return of Company Property**. Upon execution of this Agreement, GL shall turn over and return to the Company (and shall not destroy or damage) all property whatsoever of the Company in or under its possession or control. Notwithstanding the foregoing, GL may retain copies of the financial statements of the Company for the sole purposes of using such information in connection with its income and other tax reporting obligations.

11.00    **Amendments**. This Agreement may be modified, altered, supplemented, amended or revoked only by a subsequent duly authorized written instrument executed by all parties hereto.

12.00    **Mutual Cooperation**. The parties agree to execute such other documents as may be necessary for the implementation and consummation of this Agreement and the transactions contemplated herein.

13.00    **Succession**. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, personal representatives, successors and assigns.

14.00    **Governing Law; Jurisdiction; Venue**. This Agreement and any controversy or claim arising out of or relating to this Agreement shall be governed by, interpreted and construed in accordance with the laws of the State of North Carolina, without giving effect to the principles of conflicts of laws or any other principle that could result in the application of the laws of any other jurisdiction. Any proceeding arising out of or relating to this Agreement shall be brought only in the Bankruptcy Court in the Central District of California, and each of the parties irrevocably submits to the exclusive jurisdiction of each such court in any such proceeding, waives any objection it may now or hereafter have to venue or to convenience of forum, agrees that all claims in respect of the proceeding shall be heard and determined only in any such court and agrees not to bring any proceeding arising out of or relating to this Agreement in any other court. The parties agree that any of them may file a copy of this paragraph with any court as written evidence of the knowing, voluntary and bargained agreement between the parties irrevocably to waive any objections to venue or to convenience of forum. Process in any proceeding referred to in the first sentence of this section may be served on any party anywhere in the world.

15.00    **Captions and Exhibits**. The paragraph headings contained herein are for convenience only and shall not in any way affect the interpretation or enforceability of any provisions of this Agreement.

16.00    **Execution and Counterparts**. This Agreement may be executed by each of the parties hereto on any number of separate counterparts, each of which shall be an original and all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart signature page to this Agreement in Portable Document Format (PDF) or by facsimile transmission shall be as effective as delivery of a manually executed original counterpart thereof.

17.00    **Notice**. All notices, requests and demands and other communications hereunder must be in writing and shall be deemed to have been duly given (i) if given by fax, when such fax is transmitted to the fax number specified in this Agreement, if telephone confirmation of receipt thereof is obtained, and if a copy of such communication is also sent on the same day in accordance with either subsection (ii) or (iii) of this Section, (ii) on the date of delivery shown on the return receipt (or, if none shown, three (3) days after deposit in the mail) if placed in the United States mail and forwarded by registered or certified mail, return receipt requested, postage prepaid, or (iii) one (1) day after delivery, if delivered, prepaid, to an overnight courier. All such communications shall be addressed as follows:

If to:
Gospel Light Publications
1957 Eastman Avenue
Ventura, CA 93003

With copy to:
Craig Margulies, Esq.
Margulies Faith LLP
16030 Ventura Blvd., Suite 470
Encino, CA 91436

If to:
ZDL Holdings, LLC
c/o Dwight E. Nordstrom
Unit A3, Floor 15, Tower A
Xihuan Plaza, No. 1 Xizhimenwai St.
Xicheng District, Beijing 76716

With copy to:
James L. Blane, Esq.
1057 E. Morehead Street
Suite 100
Charlotte, NC 28204

Any party may change the address(es) to which notices to it are to be sent by giving notice of such change to the other parties in accordance with this Section.

18.00    **Severability**. Wherever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law. In the event that any provision of this Agreement or any word, phrase, clause, sentence or other portion thereof should be held to be unenforceable or invalid for any reason, the remaining provisions of this Agreement shall remain in full force and effect and such provision or portion thereof shall be modified or deleted in such a manner as to make the provisions hereof, as modified, legal and enforceable to the fullest extent permitted under applicable law, and in lieu thereof, there shall be substituted a provision as identical in nature as to such illegal, invalidated or unenforceable provision as possible while said substituted provision will remain legal, valid and enforceable.

19.00    **Entire Agreement**. This Agreement constitutes the entire agreement and understanding between the parties hereto and supersedes, cancels and annuls any and all prior contracts, agreements and understandings relating to the subject matter of this Agreement.

[The remainder of this page is intentionally left blank.]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement under seal effective
the day and year first above written.

**GOSPEL LIGHT PUBLICATIONS**

By:_____

   DAVID THORNTON, Chief Executive Officer        (SEAL)


**PACIFIC RESOURCES INTERNATIONAL, LLC**


By:

   _____

   DWIGHT E. NORDSTROM, Manager            (SEAL)


**ZDL HOLDINGS, LLC**

By: PACIFIC RESOURCES INTERNATIONAL, LLC


By:

   _____

   DWIGHT E. NORDSTROM, Manager            (SEAL)

By:_____

   DAVID THORNTON, Manager                (SEAL)

# EXHIBIT A

## OWNERSHIP INTEREST POWER

Effective as of 12:01 am, Eastern Standard Time, on January 1, 2015, **GOSPEL LIGHT PUBLICATIONS** hereby conveys, assigns, and transfers ALL of its ownership interest in and to ZDL Holding, LLC, a North Carolina limited liability company (the "Company"), legal and equitable, comprising a sixty-three percent (63.00%) ownership interest in the Company, whether or not represented by any Certificate, and does hereby irrevocably constitute and appoint James L. Blane, attorney, as its agent to transfer said ownership interest on the books of the Company with full power of substitution in the premises. Concurrently with the aforesaid conveyance, assignment and transfer, Gospel Light Publications hereby withdraws from membership in the Company.

**GOSPEL LIGHT PUBLICATIONS**

By: _____

    DAVID THORNTON, Chief Executive Officer  (SEAL)